**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00376-RM

GREGORY A. FERNANDEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

    Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff Gregory A. Fernandez's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

Defendant provided the Court with the administrative record. (ECF Nos. 11; 11-1; 11-2; 11-3; 11-4; 11-5; 11-6; 11-7.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 14; 21; 22.)

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in June 2010, alleging he was disabled as of May 25, 2010, due to the following conditions that limit his ability to work: torn rotator cuff right shoulder, mental issues, upper back, and migraines. (Admin. R. ("Tr.") 84, 92, 95, 163-70.) After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ. (Tr. 98-99.) The ALJ denied Plaintiff's applications. (Tr. 7-28.) Plaintiff requested review of the ALJ's decision and, in January 2013, the Appeals Council denied such request. (Tr. 1-6.) Plaintiff timely requested judicial review before the Court.

### A. Background and Relevant Medical Evidence

Plaintiff was born in 1967. (Tr. 38.) Plaintiff completed high school. (Tr. 40, 53-54.) Plaintiff's past relevant work, as referenced in the Dictionary of Occupational Titles, includes: lubrication tech and asbestos removal worker. (Tr. 58, 232.)

Plaintiff claims he became disabled on May 25, 2010 due to a combination of physical and mental health impairments. (Tr. 84, 92, 95, 163-70.)

#### 1. Physical Issues

From 2009 through 2011, Plaintiff obtained treatment from the Pueblo Community Health Center. (Tr. 246-54, 325-41.)

On October 7, 2010, Lindsay Lilly, M.D., examined Plaintiff and assessed that Plaintiff a herniated nucleus pulposus: right C55-6 and Left C6-7; radiculitis. (Tr. 264.) Dr. Lilly recommended a cervical decompression and fusion surgery. (Tr. 264.)

On October 29, 2010, Dowin H. Boatright, M.D., examined Plaintiff and completed a consultative examination. (Tr. 273-77.) Dr. Boatright opined that Plaintiff has certain physical limitations including not lifting more than fifteen pounds; not engaging in fine motor movements with the right hand; not bending (neck); environment limitations which would require high visual acuity. (Tr. 277.)

On December 28, 2010, Dr. Lilly performed cervical surgery on Plaintiff. (Tr. 308-09.) On February 10, 2011, Plaintiff reported he had a decreased range of motion and was in pain. (Tr. 337.) On March 10, 2011, Plaintiff had another MRI which revealed the central canal stenosis had improved to a moderate degree (Tr. 297) but "hypertrophic changes in the lateral recesses and neural foramina are resulting in severe bilateral foraminal narrowing at C5-C6 and C6-C7." (Tr. 298.) Subsequent to the surgery, Plaintiff received conservative treatment. (*See* Tr. 325-38.)

Alan Ketelhohn, M.D., a non-examining state-agency consultant, completed a residual functional capacity assessment of Plaintiff. (Tr. 75-79.) Dr. Ketelhohn opined that Plaintiff retained the residual functional capacity consistent with the following: occasionally lifting and/or carrying 10 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking 4 hours; sitting for about 6 hours; occasionally climbing ladders/ropes/scaffolds; occasionally crawling; limited right fine manipulation; and avoiding exposure to hazards. (Tr. 75-79.)

Plaintiff testified that he can sit for forty-five minutes to an hour; stand for an hour while leaning on something; walk for eleven minutes and lift fifteen to twenty pounds. (Tr. 47.) Plaintiff has problems with strength on his right side. (Tr. 48.) Plaintiff has headaches twice a day which last about an hour. (Tr. 48.) Plaintiff's medication causes sleepiness, drowsiness,

dizziness, dry mouth, and an upset stomach. (Tr. 49.) Plaintiff uses a cane to ambulate. (Tr. 54-55.)

        2.    <u>Mental Issues</u>

In 2009, Pueblo Community Health Center treated plaintiff for depression. (Tr. 250-252.)

In October 2010, Brett Valette, Ph.D. conducted a consultative examination of Plaintiff. (Tr. 267-69.) Dr. Valette assessed Plaintiff with a global assessment of functioning ("GAF") score of 55. (Tr. 269.) Dr. Valette assessed Plaintiff with a non-specific mood disorder and depression with a rule out diagnosis of borderline IQ. (Tr. 269.)

In November 2010, James J. Wanstrath, Ph.D. completed a psychiatric review technique of Plaintiff's mental faculties. (Tr. 85-86.) Dr. Wanstrath opined that Plaintiff "appears to have below average intellectual capacity and thus would have a mild impairment to [sic] concentration and pace." (Tr. 86.) Further, Dr. Wanstrath opined that Plaintiff's depression is well controlled. (Tr. 86.)

In May 2011, Nicholas Rodriguez, LCSW, conducted a mental health assessment of Plaintiff. (Tr. 315-17.) Mr. Rodriguez assessed Plaintiff with major depressive disorder. (Tr. 317.) Mr. Rodriguez assigned Plaintiff a GAF[2] score of 50. (Tr. 317.)

In September 2011, Eileen Spangler, a psychiatric nurse practitioner, prescribed Plaintiff mental health medication. (Tr. 321.) Ms. Spangler assessed Plaintiff with depressive disordered, bereavement, hypnotic dependence, opioid dependence, acute alcoholic intoxication in

---

[2] A GAF score between 41 and 50 indicates serious symptoms or serious impairments in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed. text revision 2000). The Court notes that the current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF. Am. Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 16 (5th ed. 2013).

remission, and marijuana dependence in remission. (Tr. 321.) Ms. Spangler noted some evidence of symptom exaggeration. (Tr. 321.)

In December 2011, Mr. Rodriguez completed another mental residual functional capacity evaluation in which he opined that Plaintiff has marked or extreme limitations in understanding and memory; concentration and persistence; and social interaction. (Tr. 362-64.)

Plaintiff testified that he has difficulty being around other people and has anxiety. (Tr. 47-48.)

### B.    The ALJ's Decision

On October 25, 2011, ALJ Kim S. Nagle issued her decision in this matter denying Plaintiff DIB and SSI. (Tr. 7-28.) In reaching her decision, ALJ Nagle followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 11-22.) ALJ Nagle found that Plaintiff has met the disability insured status of the Act through March 31, 2011 and has not engaged in substantial gainful activity since May 25, 2010, the alleged onset date. (Tr. 13.) ALJ Nagle found that Plaintiff has the following severe impairments: status post cervical discectomy with resultant chronic pain, headaches, a learning disability, osteoarthritis of the right shoulder, polysubstance dependence, and a non-specific mood-disorder. (Tr. 13-14.) ALJ Nagle found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listing 12.04. (Tr. 13-14.) ALJ Nagle found Plaintiff's residual functional capacity ("RFC") to be as follows: "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant is able to stand or walk for four hours per workday, can occasionally climb ladders, ropes, or scaffolds, and crawl, and can perform frequent right-handed fine manipulation tasks. The claimant is to avoid even moderate exposure

to dangerous machinery and unprotected heights.  Additionally, the claimant is limited to simple, routine, and repetitive tasks with only occasional interaction with the general public." (Tr. 15-22.)  ALJ Nagle found that Plaintiff has past relevant work and that he is unable to perform such work.  (Tr. 22.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Nagle's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Nagle found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including: production worker positions (such a lens inserter; a final assembler; and a stop attacher) as well as a surveillance system monitor.  (Tr. 22-24.)

Therefore, ALJ Nagle concluded that Plaintiff was not disabled.  (Tr. 24.)

### C.    Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter.  (Tr. 6.)  On January 17, 2013, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-5.)  Plaintiff appeals that decision by bringing this lawsuit.  (ECF No. 1.)

## II.    LEGAL STANDARDS[3]

### A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.

---

[3] Many C.F.R. citations are to part 404—which addresses DIB claims.  All cited regulations have parallel citations in part 416—which addresses SSI claims.

6

*Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i),

423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d),

416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step.  Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

### III.  ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that:  (1) the ALJ failed to assess properly Plaintiff's physical impairments, specifically that the ALJ failed to state the weight given to a consultative examiner's opinion (ECF No. 14 at 24-35); (2) the ALJ failed to assess properly Plaintiff's mental limitations (ECF No. 14 at 35-53); and (3) the ALJ failed to assess properly whether the jobs Plaintiff could perform (given his RFC) exist in significant numbers (ECF No. 14 at 53-57).

Because the Court finds the ALJ committed legal error due to her failure to state and adequately discuss the weight afforded to a certain medical provider, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's

error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

> A. **The ALJ Committed Reversible Error by Not Stating How Much Weight She Gave to Dr. Boatright's Opinion and by Failing to Discuss Adequately that Opinion.**

The ALJ is required to weigh every relevant medical opinion he or she receives. *See* 20 C.F.R. §§ 404.1527(c)-(d); *Watkins*, 350 F.3d at 1301 (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why a medical opinion was not adopted). "It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 927(c)); *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (holding that "an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it"); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). The ALJ "must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii)). "[W]hen deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. []§ 404.1527(d). . . ." *Lauxman*, 321 F. App'x at 769;

*see also Wade v. Astrue*, 268 F. App'x. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished). "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Medical opinions are defined as "'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. § 404.1527(a)(2)). Medical opinions may not be ignored and all medical opinions must be evaluated by Defendant in accordance with factors contained in the regulations. *Id*. (citing 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2-3 (July 2, 1996)). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. §§ 404.1527(d)(2-6). As to non-treating physicians, the ALJ is still required to consider their opinions and to provide specific, legitimate reasons for rejecting it. *Doyal*, 331 F.3d at 764; SSR 96-5p, 1996 WL 374183, at *1. Although the ALJ need not discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), she "must be 'sufficiently specific' to

11

permit meaningful" review. *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (citation omitted). An ALJ may not reject certain medical opinions on the presumption that those providers were paid for the report or obtained at the request of a claimant's attorney. *See Crowder v. Colvin*, 561 F. App'x, 740, 743 (10th Cir. 2014) (unpublished) (citation omitted).

In this matter, the ALJ did not give controlling weight to a treating source's opinion. (*See generally* Tr. 10-24.) The ALJ did not state how much weight she gave to Dr. Boatright's medical opinion regarding Plaintiff's restrictions. (*See generally* Tr. 10-24.) The Court is unable to discern what weight, if any, the ALJ gave to Dr. Boatright's opinion. 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions . . . of any treating, non-treating and non-examining sources. . . ."); *see Keyes-Zachary*, 695 F.3d at 1161 (citation omitted); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding ALJ's listing of factors he considered was inadequate when the court was "left to speculate what specific evidence led the ALJ to [his conclusion]").

"Although the ALJ need not discuss all of the evidence in the record, [s]he may not ignore evidence that does not support [her] decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton,* 79 F.3d at 1009-10). In this matter, the ALJ did not discuss Dr. Boatright's medical opinion regarding Plaintiff's physical impairments. (*See generally* Tr. 15-22.) The ALJ, failed to discuss how she resolved conflicts in the evidence as contained within Dr. Boatright's opinion

12

(Tr. 277) in comparison to Dr. Ketelhohn's opinion (Tr. 87-90). (*See generally* Tr. 15-22.) Dr. Ketelhohn's opinion states that Dr. Boatright's opinion is "mostly valid." (Tr. 87.) While it might be argued that Dr. Ketelhohn's opinion thus essentially incorporates Dr. Boatright's, the claim does not withstand analysis. For example, Dr. Ketelhohn's opinion does not address Dr. Boatright's limitation with regard to bending of the neck.

Defendant argues that the ALJ permissibly addressed Dr. Boatright's limitations on Plaintiff because it was ambiguous. (ECF No. 21 at 11-12.) Defendant further argues that the "ALJ apparently treated this [postural] limitation minimal[ly]." (ECF No. 21 at 12.) Nowhere, however, does the ALJ state that she gave little or zero weight to Dr. Boatright's opinion because it was ambiguous. (*See generally* Tr. 15-22.) The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson*, 366 F.3d at 1084. "'Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id*. at 1084-85 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance and that judicial review is limited to the reasons stated in the ALJ's decision).

As such, the ALJ's failure to state the weight afforded to and to adequately discuss Dr. Boatright's opinion constitutes legal error.

### B. The ALJ's Error Is Not Harmless

Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). This analysis is applied

cautiously in the administrative context. *Id*. at 733. Where the court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166. In this matter, Defendant does not advocate that the Court apply harmless error analysis. In fact, Defendant argues that "any error in the hypothetical[s] [to the vocational expert which failed to account for Dr. Boatright's limitations was] *minimal*." (ECF No. 21 at 13 (emphasis added).) Further, the Court does not find the harmless error analysis applicable in this matter.

> The Tenth Circuit has previously held that
>
> if the ALJ's RFC is 'generally consistent' with the findings in a medical opinion, or if the RFC is "more favorable" to the claimant than the opinion's findings, then there is no reason to believe that a further analysis or weight of the opinion could advance the claimant's claim of disability. In such a case, the error is harmless because the claimant cannot show prejudice stemming from the ALJ's failure to give greater weight to the opinion.

*Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (unpublished) (internal alterations omitted and citation omitted). In this matter, the ALJ's RFC determination (Tr. 15) is not more favorable, in all respects, to Plaintiff than Dr. Boatright's opinion (Tr. 277). Nor does the Court find the ALJ's RFC determination (Tr. 15) consistent with Dr. Boatright's opinion (Tr. 277). Specifically, the ALJ's RFC determination (Tr. 15) does not address Dr. Boatright's opinion that Plaintiff has a postural limitation in his neck (Tr. 277). And more specifically, Dr. Boatright opines that Plaintiff has "[m]anipulative limitations [which] include fine motor movements in the right hand" (Tr. 277), while the ALJ's RFC states that Plaintiff "can perform frequent right-handed fine manipulative tasks" (Tr. 15). While the Court does not interpret Dr. Boatright's limitation as necessarily being "occasional" or less, it need not be interpreted as "frequent."

Again, the ALJ's decision must be evaluated "based solely on the reasons given stated in the decision," *Robinson*, 366 F.3d at 1084, and since no reason is given for this ability to complete "frequent" right-handed fine manipulation tasks, the Court cannot find substantial evidence supporting the ALJ's decision.

Thus, the ALJ's failure to state the weight afforded to and adequately discuss Dr. Boatright's opinion is not harmless error.

## IV.  CONCLUSION

Based on the foregoing, the Court:

(1)  VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2)  REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 5th day of February, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge